IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| ROGER A. SALVATORA, SANDRA E. SALVATORA, D&M MARBURGER FAMILY ENTERPRISES, L.P., HEASLEY'S NURSERIES, INC., RODNEY L. LANG, BONITA A. LANG, INDIVIDUALLY AND ON BEHALF OF ALL THOSE SIMILARLY SITUATED;<br><br>Plaintiffs,<br><br>vs.<br><br>XTO ENERGY INC.,<br><br>Defendant. | Civil Action No.:<br>2:19-CV-01097-WSS-CBB<br><br>William S. Stickman, IV<br>United States District Judge<br><br>Christopher B. Brown<br>United States Magistrate Judge |

**MEMORANDUM AND ORDER
ON MOTION TO COMPEL ARBITRATION ECF NO. 194[1]**

**Christopher B. Brown, United States Magistrate Judge**

**I.     Introduction**

This class action was initiated by the representative Plaintiffs Roger A. Salvatora, Sandra E. Salvatora, D&M Marburger Family Enterprises, L.P., Heasley's Nurseries, Inc., Rodney L. Lang, and Bonita A. Lang (collectively

---

[1]     Motions to compel arbitration are non-dispositive motions under 28 U.S.C. § 636(b). *See Virgin Islands Water and Power Auth. v. Gen. Elec. Intern. Inc.*, 561 Fed. Appx. 131, 133–34 (3d Cir. 2014) (unpublished) ("motions to compel arbitration and stay the proceedings" are not dispositive motions and there is "no exercise of Article III power when a Magistrate Judge rules on a motion to compel arbitration.").

1

"Plaintiffs") against Defendant XTO Energy Inc. ("XTO") for alleged breaches of natural gas royalty leases.

Presently before the Court is a motion to compel arbitration by XTO. ECF No. 194. The motion is fully briefed and ripe for consideration. ECF Nos. 195, 199, 201. This Court has subject matter jurisdiction under 28 U.S.C. § 1332.

For the reasons that follow, XTO's motion to compel arbitration is denied.

## II.     Background

Because the Court writes primarily for the parties, only those facts necessary to resolve the present motion will be discussed.

### a. Procedural History of *Marburger v. XTO Energy, Inc.*, 2:15-cv-910 (W.D.Pa. 2015) ("*Marburger*") and the Present Action *Salvatora v. XTO Energy, Inc.*, 2:19-CV-01097-WSS-CBB (W.D.Pa. 2019)

In *Marburger*, certain landowners and royalty interest owners signed oil and gas leases and XTO produced natural gas under those leases. Certain leaseholders thereafter brought a class action for the alleged improper deduction of post-production expenses from their gas royalty payments. During discovery, XTO's expert authored a report in March 2017 indicating at least some of the class leases contained arbitration provisions. ECF No. 200-1 at p. 4. The parties ultimately settled the case on behalf of the class and the Court approved the settlement. The settlement permitted XTO to deduct post-production costs from royalties including "all costs from and after the wellhead to the point of sale . . . incurred with the sale of such production[.]" ECF No. 168 at 4.

Plaintiffs filed the instant class action against XTO on August 29, 2019, after the *Marburger* settlement. ECF No. 1.  Here, Plaintiffs allege XTO has been taking unreasonably high deductions from royalty payments for processing and gathering gas after the *Marburger* action settled.  Plaintiffs claim that XTO contracts with an affiliate company instead of a third party to gather and process gas.  In doing so, Plaintiffs claim the affiliate charges higher costs than a third-party would charge, these costs are deducted from their royalties and Plaintiffs now seek to recover the alleged excessive charges.

Before XTO filed an answer to the original complaint, Plaintiffs filed an amended complaint on November 5, 2019. ECF No. 14.  Thereafter, XTO filed its answer and did not raise arbitration as an affirmative defense. ECF No. 15.  The parties then exchanged initial disclosures, participated in an initial case management conference, and engaged in fact and expert discovery related to the class. ECF Nos. 23, 24, 25.  The parties sought several extensions to complete class discovery ECF Nos. 30, 36, 45, 58, 78.

Almost two years later, Plaintiffs filed a second amended complaint on September 13, 2021. ECF No. 56.  Thereafter, XTO filed its answer and again did not raise arbitration as an affirmative defense. ECF No. 59.

In October 2021, the same expert XTO employed in *Marburger* authored an expert report indicating that some of the class leases in the instant matter contained an arbitration provision. ECF No. 200-2 at p. 4.

Plaintiffs filed a third amended (and operative) complaint on January 28, 2022. ECF No. 79. XTO filed its answer on February 9, 2022 and again did not raise arbitration as an affirmative defense. ECF No. 80.

Plaintiffs filed a motion for class certification on March 23, 2022, ECF No. 86, which XTO responded to on April 27, 2022. ECF No. 94. It was then, for the first time, XTO mentioned the lease arbitration provisions in its response. In its response brief, XTO noted that while the named Plaintiffs' leases do not contain arbitration clauses, there were putative unnamed class members who had leases that contain arbitration clauses and XTO argued that the named Plaintiffs' leases were not typical of the class. ECF No. 94 at 19-20. XTO did not, however, move to compel arbitration. Instead, and in tandem with its response, it filed two *Daubert* motions to exclude the testimony of Plaintiffs' expert witnesses. ECF No. 91, 92. Plaintiffs thereafter filed their own *Daubert* motions against XTO's experts, which XTO defended against. ECF Nos. 117, 119, 121, 122, 126. A two-day class certification hearing was held on February 9-10, 2023. ECF Nos. 163, 164. A Report and Recommendation ("R&R") was issued on the pending motions, XTO filed objections thereto, ECF No. 170, and the Court adopted the R&R on June 22, 2023 and certified the class. ECF No. 171. The class generally consists of lessors who were members of the *Marburger* class settlement or who were parties to a lease that contained a Market Enhancement Clause. ECF Nos. 199 at 2; 168 at 8; 171 at 2; 173. As for XTO's arbitration argument, the Court declined to determine whether XTO was entitled to compel arbitration because no formal motion to compel

arbitration was before it and found XTO could raise the arbitration defense after notice to the class and the opt-out period to provide better context of these arbitration provisions. *See* ECF No. 168 at p. 33-34 adopted by ECF No. 171.

Thereafter, XTO filed for permission to appeal the class certification decision with the United States Court of Appeals for the Third Circuit. ECF No. 180. Permission to appeal was denied. ECF No. 184.

The Court issued another case management order with respect to sending notice to the class and engaging in merits discovery. ECF No. 183.  Thereafter, the parties issued notice to the class members in October 2023, ECF Nos. 188, 189, 190, 191, and provided the Court with a list of excluded class members on February 23, 2024. ECF No. 192.  On March 29, 2024, XTO filed the instant motion to compel arbitration. ECF No. 194.

### b. Arbitration Provisions

It is undisputed that the named class members' oil and gas leases do not contain provisions mandating arbitration.  XTO maintains out of the 470 class leases, at least 16 leases contain an arbitration provision and seek to compel the claims under these 16 leases to arbitration.[2]  XTO maintains it identified these leases "during pre-certification discovery[.]" ECF No. 195 at 2.  While the arbitration provisions in the leases do not contain identical language, the provisions

---

[2] Plaintiffs argue that XTO's motion to compel arbitration relates to 15 leases (not 16), as one of the leases cited by XTO is not part of the class, and therefore the reference to 16 leases is a mistake.  ECF 199 at 8 n.2.

5

generally provide questions, disputes or disagreements regarding performance under the leases shall be determined by arbitration. *See* ECF No. 195 at 3.

### III. Discussion

XTO now, after more than four and a half years of litigation, moves to compel arbitration of those 16 (or 15) leases under the Federal Arbitration Act ("FAA") and exclude them from the class. Plaintiffs do not dispute enforceability of the arbitration provisions, nor the application of the FAA to this matter. Instead, Plaintiffs respond that XTO has waived their right to compel arbitration and alternatively argue that its proposed relief is too speculative to grant. ECF No. 199.

The FAA provides that a "written provision . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Consistent with the strong preference for arbitration in federal courts, waiver is not to be lightly inferred, and waiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 208 (3d Cir. 2010) (cleaned up). However, the preference for arbitration over waiver does not make arbitration agreements more enforceable than other contracts. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418–19 (2022). Instead, "waiver occurs where a party has intentionally relinquished or abandoned … a known right. In analyzing whether waiver has occurred, a court focuses on the actions of the party who held

the right and is informed by the circumstances and context of each case." *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 339 (3d Cir. 2023) (cleaned up).

Plaintiffs argue that XTO was in possession of all the class leases since 2012 when it first administered the leases and produced gas in Butler County. ECF No. 199 at 5. By 2017, Plaintiffs argue XTO knew from its expert in the *Marburger* action that at least some of the leases contained an arbitration clause. ECF No. 199 at 5. According to Plaintiffs, XTO submitted an expert report in *Marburger* in which its expert opined that some of the leases contained arbitration clauses. *Id*. Plaintiffs argue that despite that knowledge, XTO fully litigated the *Marburger* action for three years, and settled those claims never seeking to compel arbitration. *Id*. Now, XTO seeks to arbitrate claims in this case under at least four of the leases that were at issue in *Marburger*. *Id*. Plaintiffs further argue that XTO has fully litigated this case since 2019 without seeking to compel arbitration. Plaintiffs point out that XTO has deposed each named Plaintiff, reviewed Plaintiffs' documents, produced masses of documents, conducted other discovery, and participated in Court conferences and hearings. *Id*. at 6. According to Plaintiffs, XTO had possession of all the leases "for at least 11 years, [yet] it did not move to [c]ompel [a]rbitration until March 2024, seven years after it knew about arbitration clauses in the leases and eight months after each class member had been identified." *Id*.

XTO responds that it did not and could not move to compel arbitration because the named class members in this case "do not have leases with arbitration provisions," the leases that have arbitration provisions are held by unnamed class

members and "XTO consistently maintained that the presence of the unnamed class members with arbitration provisions prevented certification and expressed its intent to enforce the provisions if the class was certified." ECF No. 201 at 5. In sum, XTO maintains that it did not intentionally relinquish its right to compel arbitration by waiting until post-class certification to compel arbitration of unnamed class members' claims when it is undisputed the named class members' contracts do not include an arbitration provision. *Id*. at 3.

The United States Supreme Court in *Morgan v. Sundance, Inc.*, recently discussed the standard courts must apply in deciding whether a party has waived its right to arbitrate. 596 U.S. 411. Before *Morgan*, many appellate courts including the Court of Appeals for the Third Circuit, *see e.g. Paine Webber Inc. v. Faragalli,* 61 F.3d. 1063 (3d Cir. 1995), *required* a non-moving party to show prejudice for a finding of waiver, but *Morgan* removed the prejudice element from a waiver analysis. After *Morgan*, to determine whether a party waived its right to arbitrate, the court must consider whether the party seeking to compel arbitration acted inconsistently with its known right to arbitrate and must consider the circumstances and contexts of the case. *White*, 61 F.4th at 339.

*Morgan* did not address the discrete issue here – which is whether a defendant in a class action waives their right to arbitrate when it actively litigates the class through class certification when only unnamed class members have contracts that contain an arbitration provision. It does not appear that the Court of Appeals for the Third Circuit has squarely addressed this issue either.

8

However, several other appellate courts have addressed this issue and have had differing outcomes. The Court of Appeals for the Eleventh Circuit found that a defendant's failure to seek arbitration with unnamed class members prior to class certification does not waive a right to arbitration. *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1238 (11th Cir. 2018). The Eleventh Circuit in this pre-*Morgan* decision reasoned that no waiver occurs in this instance because it is impossible to compel arbitration against putative class members who do not become parties to the action until the class is certified, making any motion to compel arbitration futile. *Gutierrez*, 889 F.3d at 1238 ("it cannot be said that Wells Fargo's failure to seek arbitration with the unnamed class members prior to class certification manifested inconsistency with its arbitration rights, considering that it would have been impossible in practice to compel arbitration against speculative plaintiffs and jurisdictionally impossible for the District Court to rule on those motions before the class was certified.").[3] *See also In re JPMorgan Chase & Co.*, 916 F.3d 494, 503 n.19 (5th Cir. 2019) (remarking in a collective action that "courts cannot compel

---

[3] Some district courts have also taken this approach and found that while actively litigating the merits of a case prior to asserting a right to arbitrate might result in waiver, "[o]ne exception to that rule occurs in class actions when a party participates in the litigation without moving to compel arbitration before the class is certified." *Eaton v. Ascent Resources-Utica, LLC*, No. 2:19-CV-03412, 2024 WL 1458457, at *3 (S.D. Ohio Apr. 4, 2024) (citing *Geiger v. Charter Commun., Inc.*, No. CV 18-158-DMG (GJSX), 2019 WL 8105376, at *4 (C.D. Cal. May 13, 2019). The courts reasoned when only unnamed class members have contracts that contain arbitration provisions, a party does not waive its right to arbitrate when it actively litigates the case through class certification. *Eaton*, 2024 WL 1458457, at *3. This is because "[u]ntil a class is certified, proposed new members of the class are not parties to the action who could be compelled to arbitrate." *Eaton*, 2024 WL 1458457, at *3 (collecting cases). *See also Smith v. Bayer Corp.*, 564 U.S. 299, 313–315 (2011) (an unnamed putative class member is not a party to an action before the class is certified).

9

individuals to arbitrate when they are yet to be identified and have not joined the suit.").

On the other hand, the Court of Appeals for the Ninth Circuit and Court of Appeals for the Tenth Circuit have declined to adopt such a bright line rule. *See Hill v. Xerox Bus. Services, LLC*, 59 F.4th 457, 469–70 (9th Cir. 2023); *In re Cox Enterprises, Inc. Set-top Cable TV Box Antitrust Litig.*, 790 F.3d 1112, 1119 (10th Cir. 2015) (declining to adopt a rule that would deem the "right to arbitrate against [ ] class members" as known only after "the class was certified"). These courts focused on whether the moving party knew of their right to arbitrate and did not solely focus on whether that right could have been exercised prior to class certification, because "waiver is a unilateral concept" that "looks only to the acts of [the defendant], binds only [the defendant], does not reach out to affect the rights of as then-unnamed class members, and does not depend upon when the law requires or authorizes such a right to be asserted." *Hill*, 59 F.4th 457, 469 (9th Cir. 2023). *See also In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litigation*, 790 F.3d at 1119–20 (finding that defendant waived their right to arbitrate against unnamed class members because they failed to mention its intent to raise the issue or inform the court of the existence of those rights until after class certification). While these courts acknowledged they cannot compel nonparties to arbitrate until after a class is certified, they found the "knowledge of an existing right to arbitrate" does not require "a present ability to move to enforce an arbitration agreement." *Hill*, 59 F.4th at 469 (citing *In re Cox Enterprises, Inc. Set-top Cable Television Box*

10

*Antitrust Litigation*, 790 F.3d at 1119). As the United States Supreme Court held in *Morgan*, "to decide whether a waiver has occurred, the court focuses on the actions of the person who held that right" to arbitrate. 596 U.S. at 417.

Under Third Circuit precedent, "in analyzing whether waiver has occurred, a 'court focuses on the actions of the p[arty] who held the right' and is informed by the 'circumstances and context of each case." *White*, 61 F.4th at 339. While "[f]utility can excuse the delayed invocation of the defense of arbitration[,]" *Chassen v. Fid. Natl. Fin., Inc.*, 836 F.3d 291, 297 (3d Cir. 2016), this Court has not found any binding authority that futility alone excuses the delayed invocation of an arbitration defense against unnamed class members. *See e.g., White*, 61 F.4th at 341 (noting in dicta that a notice of an intent to seek arbitration would not have been futile).

At least one district court within the Third Circuit has applied the reasoning of *Hill* and declined to adopt the bright line rule that a defendant does not waive its right to arbitrate against unnamed class members by actively litigating the case through class certification. *Valli v. Avis Budget Rental Car Group, LLC*, No. CV 14-6072 (JBC), 2024 WL 4349747, at *8 (D.N.J. Sept. 30, 2024). In *Valli*, the court focused on the defendants' actions and found that because waiver is a unilateral concept, it did not consider the effect of those actions on the opposing party or that defendants' could not have formally moved to compel arbitration against unnamed class members. *Id.* (quoting *Morgan*, 596 U.S. at 417; *Hill*, 59 F.4th at 469; *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litigation*, 790 F.3d at 1119). The court found that while the defendants mentioned their right to arbitrate

11

in their answers, their opposition to class certification and other times throughout the litigation, because "their formal assertion of their right to arbitration ha[d] come after the passage of extensive time and litigation[,]" and after they had engaged in the discovery process, this conduct evinced a preference for litigation and the defendants waived their right to arbitrate. *Valli*, 2024 WL 4349747, at *8.

XTO does not explicitly identify[4] when it became aware of the right to arbitrate, but rather argues courts "routinely reject the argument that waiting until post-certification to compel arbitration of unnamed class member claims constitutes an intentional relinquishment of the right to do so." ECF No. 201 at 3. Despite this argument, viewing XTO's actions in the context and circumstances of this case, it has waived its right to arbitrate. While XTO may be correct that the Court could not have compelled unnamed class members to arbitration prior to class certification, "[t]o decide whether a waiver has occurred, the court focuses on the action of the person who held the right; the court seldom focuses on the effects of those actions on the opposing party[,]" *Morgan*, 596 U.S. at 417, making waiver a "unilateral concept." *Hill*, 59 F.4th 457, 469 (9th Cir. 2023).

XTO began administering the leases, producing gas and paying royalties under the leases since at least 2012, had knowledge of the class leases since at least that time and was on notice that some claims could be arbitrable because some leases contained arbitration provisions. *See e.g.*, *In re Google Asst. Priv. Litig.*, No. 19-CV-04286-BLF, 2024 WL 251407, at *4 (N.D. Cal. Jan. 23, 2024) (knowledge of a

---

[4]   Though XTO does mention it "identified" certain leases containing the arbitration provisions during "pre-certification discovery[.]" ECF No. 195 at 2.

12

contractual right to arbitrate can be imputed to the contract's drafter); *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 85 (3d Cir. 2010) (non-signatories may assume obligations in an arbitration clause by their conduct).

Even if administering the leases since 2012 is not enough to impute knowledge of an arbitration provision to XTO, XTO knew by March 2017 that at least some of the leases it administered contained arbitration provisions. At that time, XTO submitted an expert report in the *Marburger* action which opined some of the leases in that action contained arbitration provisions. ECF No. 200-1 at p. 4. It is undisputed that at least four of the leases at issue in the *Marburger* action are leases that XTO is now seeking to compel to arbitration in this case. ECF No. 199 at 2. Despite this overlap, when this lawsuit was filed in 2019, XTO did not include arbitration as an affirmative defense in its answers to the original or amended complaints, or otherwise make its intent to arbitrate known in any way.

Even if knowledge cannot be imputed on XTO by virtue of its expert in the *Marburger* action, XTO engaged the same expert in this action who again opined in October 2021 that at least some of the leases had arbitration provisions and this was an impediment to certification. ECF No. 200-2 at p. 4. After this report was authored, Plaintiffs filed a third amended complaint. Despite having an expert who opined that at least some of the class leases contained an arbitration provision, XTO filed an answer to the third amended complaint that did not include arbitration as an affirmative defense. XTO first mentioned the arbitration provisions in April

2022 in their opposition to class certification and did not formally move to compel arbitration until March 2024.

XTO has engaged in four and a half years of litigation in this case. The Court has issued several extensive case management orders, held several case management conferences, the parties completed class discovery which included fact and expert class discovery, conducted depositions, reviewed and produced documents, brought discovery disputes before this Court for consideration, litigated class certification including a class certification hearing, litigated several *Daubert* motions, and attempted to appeal the class certification decision to the Court of Appeals for the Third Circuit. Given XTO's knowledge of the arbitration provisions, this conduct illustrates a preference for litigation and an abandonment of XTO's right to arbitrate.

Finally, XTO argues that the Court confirmed in its opinion on the class certification motion that the proper time to compel arbitration of an unnamed class plaintiff's claims is after certification and after the opt-out process. In its response to class certification, XTO maintained it "would not waive its arbitration rights under the leases containing them" and the arbitration provisions contained in some, but not all, of the class leases would impact typicality of the class claims. ECF No. 94 at 19-20. In addressing that argument, the Court found "[t]o the extent that XTO intends to raise the arbitration defense post-certification, a motion may be made to amend the class definition to exclude such members after the expiration of the opt-out period to enable the Court to determine the class composition and

14

analyze the specific arbitration agreements that XTO wishes to enforce." ECF No. 168 adopted by ECF No. 171. This finding does not address whether XTO could have raised the arbitration issue sooner, and the Court declined to make any direct ruling as to the waiver of the right to arbitrate. Even setting aside XTO's litigation efforts from the time it first raised arbitration at the class certification stage in April 2022 until it filed its formal motion to compel arbitration in March 2024, this does not undo the years of extensive litigation XTO engaged in prior to 2022 when it did not mention any intention to arbitrate.

Considering the context and circumstances of this case and XTO's actions, it has waived its right to compel arbitration. Accordingly, the following Order is entered:

### ORDER

AND NOW, this 16th day of December, 2024, it is hereby ORDERED that XTO's motion to compel arbitration ECF No. 194 is DENIED.

BY THE COURT:

s/Christopher B. Brown
United States Magistrate Judge